UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| JENNIFER RUSH,<br>*On behalf of herself and others similarly situated*,<br><br>     Plaintiff,<br><br>   v.<br><br>LEADPOINT, INC.,<br><br>     Defendant. | No. 6:25-CV-03331-BCW |

## DEFENDANT'S SUGGESTIONS IN SUPPORT OF ITS MOTION TO DISMISS CLASS ACTION COMPLAINT

Dated: December 8, 2025

Ann. H. MacDonald (Mo. Bar #61544)
233 S. Wacker Dr., Suite 7100
Chicago, IL 60606
Phone: (312) 258-5548
Email: ann.macdonald@afslaw.com

Adam Bowser *(pro hac vice forthcoming)*
1717 K. Street, NW
Washington DC 20006
Phone: (202) 857-6126
Email: adam.bowser@afslaw.com

*Attorneys for Leadpoint, Inc.*

## TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................ 1
II. FACTUAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS .............................. 2
III. PLAINTIFF'S CLAIM FAILS AS A MATTER OF LAW ............................................... 3
    A. Standard of Review and Applicable Standards for Statutory Interpretation .......... 3
    B. Statutory Background ............................................................................................ 5
    C. Regulatory Background ......................................................................................... 7
    D. The Three Text Messages At Issue Are Not Subject To Subsection (c)'s Private Right of Action. ....................................................................................... 8
    E. Plaintiff Independently Cannot Allege A Violation Of Any Regulation Prescribed Under Subsection (c)'s Time-Limited Grant of Rulemaking Authority ............................................................................................................... 11
IV. CONCLUSION ................................................................................................................. 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alexander v. Sandoval*,
 532 U.S. 275 (2001)...................................................................................................6, 12

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009).........................................................................................................3

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007).........................................................................................................3

*Davis v. CVS Pharmacy, Inc.*,
 No. 4:24-CV-477-AW-MAF, 2025 WL 2491195 (N.D. Fla. Aug. 26, 2025).................10

*Fernandez v. Seaboard Marine Ltd.*,
 135 F.4th 939 (11th Cir. 2025) ......................................................................................10

*HW Premium CBD, LLC v. Reynolds*,
 742 F. Supp. 3d 885 (S.D. Iowa 2024) ............................................................................9

*Jones v. Blackstone Med. Servs., LLC*,
 No. 1:24-CV-01074-JEH-RLH, 2025 WL 2042764 (C.D. Ill. July 21, 2025) ...............10

*League of Women Voters of Missouri v. Ashcroft*,
 336 F. Supp. 3d 998 (W.D. Mo. 2018) ............................................................................4

*Loper Bright Enterprises v. Raimondo*,
 603 U.S. 369 (2024).....................................................................................................2, 4

*Mais v. Gulf Coast Collection Bureau, Inc.*,
 768 F.3d 1110 (11th Cir. 2014) .......................................................................................4

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*,
 606 U.S. 146 (2025).........................................................................................................4

*Perrin v. United States*,
 444 U.S. 37 (1979)...........................................................................................................5

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
 CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014 (2003)...............7, 8, 12

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
 CG Docket No. 02-278, Second Report and Order, 38 FCC Rcd. 12247 (rel.
 Dec. 18, 2023)..................................................................................................................8

*Sanzone v. Mercy Health*,
    954 F.3d 1031 (8th Cir. 2020) ...................................................................................9

*Sayed v. Naturopathica Holistic Health, Inc.*,
    No. 8:25-CV-00847-SDM-CPT, 2025 WL 2997759 (M.D. Fla. Oct. 24, 2025) ....................11

*Stamm v. Cnty. of Cheyenne, Nebraska*,
    326 F. Supp. 3d 832 (D. Neb. 2018)...........................................................................3

*State v. Valerio*,
    No. A-1-CA-41515, 2025 WL 1621551 (N.M. Ct. App. June 6, 2025)...................................11

*Trim v. Reward Zone USA LLC*,
    76 F.4th 1157 (9th Cir. 2023) ...................................................................................10

*Wilson v. CTW Transportation Servs., Inc.*,
    74 F.4th 924 (8th Cir. 2023) .....................................................................................4

**Statutes**

47 U.S.C. § 227................................................................................................ passim

47 U.S.C. §§ 503-04 .................................................................................................12

**Other Authorities**

47 C.F.R. § 64.1200(e)...............................................................................................8

89 FR 5098 (Jan. 26, 2024).........................................................................................8

Rule 64.1200(e)..........................................................................................................7

Defendant Leadpoint, Inc. ("Leadpoint"), by and through its attorneys, respectfully submits this Motion to Dismiss Plaintiff's Class Action Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I. INTRODUCTION

"Call me. I'm driving. I can't text right now." As this everyday example illustrates, no ordinary person actually thinks a text message *is* a call, just as no one thinks an apple is an orange. But Plaintiff's entire case requires the Court to accept this false premise: that a distinct form of written communication – texting – that did not exist in 1991 when Congress passed the Telephone Consumer Protection Act ("TCPA") *is* a "telephone call" – the only form of communication within the scope of the private right of action at issue here.

That is, Plaintiff Rush brings a single claim under Subsection (c) of the TCPA. The private right of action authorized by Congress under this Subsection, however, is expressly limited to persons who have "received more than one telephone *call* within any 12-month period in violation of the regulations prescribed under this subsection . . . ." 47 U.S.C. § 227(c)(5) (emphasis added). As detailed below, the plain language of this private right of action cannot encompass Plaintiff's dispute about three *text messages* as a matter of law. Congress never created a private right of action under Subsection 227(c) of the TCPA for text-message claims like this one – as multiple courts have recently held.

While that alone is sufficient to dismiss Plaintiff's only claim here with prejudice, there is also no "regulation prescribed *under this subsection*" that Plaintiff can be enforcing here through this (inapplicable) private right of action. That's because, under the equally plain language of Subsections (c)(1) and (c)(2), the only regulations that are enforceable through Subsection (c)(5)'s private right of action were those adopted in a specific rulemaking proceeding that the Federal Communications Commission ("FCC") was required to "conclude" "not later than 9

-1-

months after December 20, 1991." 47 U.S.C. § 227(c)(2). Simply put, unlike other sections of the TCPA, Congress did not give the FCC a blank check to continue issuing new rules under Subsection (c) that would impact Subsection (c)'s already limited private right of action.

The Supreme Court recently held, "every statute's meaning is fixed at the time of enactment." *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 400 (2024). Here, that is doubly true: first, Subsection (c)'s exclusive focus on telephone calls could not possibly encompass text messages that did not exist when this law was enacted, and second, Congress expressly fixed the regulations enforceable through Subsection (c) to those adopted by the FCC in a specific rulemaking proceeding in 1992.

## II. FACTUAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS

Relevant here, Leadpoint connects individuals interested in buying a home or refinancing with a potential lender – but only after such individuals expressly opt into receiving such information via text message and provide their relevant contact information. Based on the screenshots included in Plaintiff's Complaint, an individual identifying herself as Polly, and living at 11826 Solon Springs Dr., Tomball, Texas, sought such information and was sent three text messages as a result. Compl. ¶ 21. In fact, Plaintiff concedes that these three "text messages were intended for 'Polly,' someone other than, and unknown to, Plaintiff." *Id.* ¶ 22.

Plaintiff does not allege that she ever informed Leadpoint that Polly provided the wrong telephone number or otherwise availed herself of the option detailed on each text message to unsubscribe from these apparently errant messages. *Id.* ¶ 21. Rather, Plaintiff alleges that her telephone number "has been registered with the National Do Not Call Registry since January 1, 2008" and "Defendant knew, or should have known," that. *Id.* ¶¶ 11, 27 (emphasis added).[1]

---

[1] To be sure, if someone expressly asks a company to call them, they are allowed to do so, even if the individual is on the DNC Registry. *See* 47 U.S.C. § 227(a)(4) (excluding from the

Based on just these three text messages intended for Polly, Plaintiff seeks to launch a nationwide class action encompassing all persons who (1) "did not provide their telephone number to Defendant," (2) received "more than one voice message or text message within a 12-month period," (3) "where the person's residential or cellular telephone number" is registered on the DNC Registry, and (4) over the last four years. *Id.* ¶ 28. In conclusory fashion, Plaintiff asserts that "[u]pon information [nowhere alleged in the Complaint] and belief, the members of the class are so numerous that joinder" would be impracticable. *Id.* ¶ 30.[2]

## III. PLAINTIFF'S CLAIM FAILS AS A MATTER OF LAW

### A. Standard of Review and Applicable Standards for Statutory Interpretation

In resolving a 12(b)(6) motion, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" only if the plaintiff pleads facts – not conclusions – that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must accept well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (emphasis added).

---

definition of "telephone solicitation" calls made with permission or as part of an established business relationship). Congress also recognized in Subsection (c) of the TCPA that mistakes happen, and it "shall be an affirmative defense in any action brought under this paragraph that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5). Here, Defendant was clearly attempting to reach a different person and stopped attempting to contact this individual after a limited number of text messages, even without Plaintiff requesting Defendant stop texting.

[2] Even when pleading on information and belief, "a claim must still be based on factual content that makes liability plausible, and not be formulaic recitations of the elements of a cause of action." *Stamm v. Cnty. of Cheyenne, Nebraska*, 326 F. Supp. 3d 832, 855–56 (D. Neb. 2018) (emphasis added). Put differently, Plaintiff provides *no* factual basis for this case to proceed as a class action.

-3-

Separately, as the Court has previously recognized, "statutory interpretation 'begins with the plain language of [the] statute.' If its language is plain, the statute must be enforced according to its terms." *League of Women Voters of Missouri v. Ashcroft*, 336 F. Supp. 3d 998, 1003 (W.D. Mo. 2018) (citing *Jimenez v. Quarterman*, 555 U.S. 113, 118, (2009)); *see also Wilson v. CTW Transportation Servs., Inc.*, 74 F.4th 924, 926 (8th Cir. 2023) ("When a statute is unambiguous, interpretation both begins and ends with the text.").

That maxim is more true now than ever after the Supreme Court's *Loper Bright* decision, in which the Court eliminated *Chevron* deference. *See* 603 U.S. 369 (2024). This ruling returned courts to their traditional function "to decide whether the law means what the agency says." *Id.* at 392. Courts must utilize "the reading the court would have reached if no agency were involved." *Id.* at 400 (internal quotations and citation omitted). And critically, "every statute's meaning is fixed at the time of enactment." *Id.* (internal quotations and citation omitted).

The Supreme Court's recent decision in *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025) is instructive. Before *McLaughlin Chiropractic*, courts viewed FCC orders as controlling at the district court level under the Hobbs Act, meaning "the district court lack[ed] jurisdiction" to rule contrary to FCC rulings. *See Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1120 (11th Cir. 2014). *McLaughlin Chiropractic* eliminated this line of authority, holding that district courts are not "bound by the FCC's interpretation of the TCPA," and instead, courts must interpret the statute "under ordinary principles of statutory interpretation." *Id*. at 155.

The confluence of *Loper Bright* and *McLaughlin Chiropractic* results in the following: the provision of the TCPA at issue must be interpreted to reach the "best" interpretation, as it was written in 1991, and unconstrained by the views and interpretations of the FCC. And just

like any statute, the Court should the interpret the words of the TCPA at issue here using "their ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979). Here, that can only mean that a telephone call is a telephone call – and not a text message that didn't exist in 1991 when the TCPA was enacted.

  **B.**  **Statutory Background**

  This case arises under one particular provision, Subsection (c), of the TCPA. Through this provision, Congress directed the FCC to develop rules "concerning the need to protect *residential telephone subscribers'* privacy rights to avoid receiving telephone solicitations to which they object." *Id.* § 227(c)(1) (emphasis added). Congress specifically required the FCC to initiate a rulemaking within 120 days of December 20, 1991 to address these issues limited to residential telephone subscribers. *Id.* And unlike the temporally open rulemaking authority that Congress granted the FCC in Subsection 227(b),[3] Congress put a clear deadline on the FCC's Subsection 227(c) rulemaking authority: the FCC had to "conclude" its rulemaking under Subsection 227(c)(1) "[n]ot later than 9 months after December 20, 1991[.]" 47 U.S.C. § 227(c)(2).

  Next, as it relates to the private right of action contained in subsection (c) of the TCPA, a plaintiff has a right to sue only if that person "has received more than one telephone *call* within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5) (emphasis added). Congress also directed the FCC to consider whether it needed additional "authority to further restrict telephone solicitations," and if so, to "propose specific restrictions *to Congress*." 47 U.S.C. § 227(c)(1)(D) (emphasis added).

---

[3] "The Commission shall prescribe regulations to implement the requirements of this subsection." 47 U.S.C. § 227(b)(2).

Notably, Congress subsequently amended the TCPA to bring text messages within its scope, but only under a different provision regarding Caller ID requirements. Consolidated Appropriations Act, 2018, H.R. 1625, 115th Cong., Pub. L. No. 115-141, div. P, § 503(a) (2018) (codified at 47 U.S.C. § 227(e)).

In doing so, Congress specifically distinguished between "a call made using a voice service" and a "text message sent using a text message service." 47 U.S.C. § 227(e)(8)(A), (B). This amendment to specifically add text messages to *part* of the TCPA's regulatory regime demonstrates that text messages are not included in provisions on which Plaintiff bases her claim. In short, Congress distinguishes between calls and text messages in the very statute at issue, and Subsection (c)'s private right of action relates to *only* telephone calls.

To reiterate, Congress—the only body that can create a private right of action[4]—conferred a private right of action in Subsection 227(c)(5), to any person who has "received more than one telephone *call* within any 12-month period by or on behalf of the same entity *in violation of the regulations prescribed under this subsection*." (emphasis added). Again, the only regulations that are contemplated "under this subsection" are those that the FCC was authorized to adopt pursuant to the time-limited grant of Congressional authority that expired in 1992 in a specific rulemaking proceeding – before text messaging even existed. But as detailed below, the FCC only very recently added text messaging to its TCPA regulations, making it legally impossible *those regulations* can be enforced through the limited private right of action in Subsection (c), let alone alter the plain language of the Congressionally-authorized private right of action limited to telephone calls.

---

[4] *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001) (language in a regulation cannot "conjure up a private cause of action that has not been authorized by Congress. Agencies may play the sorcerer's apprentice but not the sorcerer himself.").

-6-

The Court need go no further than the plain language of the statute to dismiss Plaintiff's claim. Plaintiff has not alleged that she has received two or more telephone calls from Leadpoint. That is a condition precedent to any suit under Subsection (c), and she fails to make any such allegations.

### C. Regulatory Background

Plaintiff implicitly seeks to sue under two subsequent FCC orders. The first order was released on July 3, 2003, and was the first instance in which the FCC determined that a text message should be considered a call for purposes of the TCPA's restrictions on using "an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone number."[5] In other words, as even the pre-*Loper Bright* decisions Plaintiff cites in her complaint recognized, the FCC was acting pursuant to its distinct rulemaking authority **under Subsection (b)**. Compl. ¶ 58 (citing *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953 (9th Cir. 2009) (deferring to the FCC's interpretation under *Chevron*, and recognizing that Congress "delegated the FCC with the authority to make rules and regulations to implement the TCPA. ***See*** **47 U.S.C. § 227(b)(2)**.") (emphasis added). In other words, the Ninth Circuit implicitly recognized that the FCC could not have adopted any rules impacting Subsection (c)'s private right of action in 2003, because it expressly has no such authority under the plain language of the statute.

Also relevant here, the FCC further expanded its Do-Not-Call rules in 2003 to go beyond the "residential telephone subscribers' privacy rights" authorized by Congress in Subsection (c)(1). 47 U.S.C. § 227(c)(1). That is, the FCC added Rule 64.1200(e), which extended "[t]he rules set forth in section 64.1200(c) and 64.1200(d)" as being "applicable to any person or entity

---

[5] *See In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* ("2003 TCPA Order"), CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, ¶ 165 (2003).

making telephone solicitations or telemarketing calls to wireless telephone numbers … ." 2003 TCPA Order, Appendix A.

The second order relevant here was released on December 18, 2023, with the applicable rule taking effect on March 26, 2024[6]— **over thirty years** after the lapse of the agency's rulemaking authority tied to the private right of action under Subsection 227(c)(5). There, the FCC again expanded its Do-Not-Call-related rules to apply not just to live sales calls, but also to marketing *text messages*. 38 FCC Rcd. 12247 ¶ 26; 47 C.F.R. § 64.1200(e). But both orders, and the new rules they adopted, came out long after the 1992 expiration of Congress's time-limited grant of authority to the FCC under the TCPA to create regulations for which a private cause of action would exist under Subsection 227(c)(5).

Thus, neither order provides Plaintiff with a private right of action to bring a claim under Subsection 227(c)(5) for an alleged violation of Section 64.1200(c)(1). But perhaps even more telling here, the fact that the FCC now itself distinguishes between "telemarketing calls *or* text messages," 47 C.F.R. § 64.1200(e), demonstrates that *even the FCC* doesn't believe a text message *is* a "call."[7]

### D. The Three Text Messages At Issue Are Not Subject To Subsection (c)'s Private Right of Action.

With the elimination of the *Chevron* doctrine and Hobbs Act deference, the issue for the Court now is a straightforward matter of statutory interpretation. The Could must determine whether the private right of action in Subsection (c) expressly limited to telephone calls

---

[6] *See In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* ("2023 TCPA Order"), CG Docket No. 02-278, Second Report and Order, 38 FCC Rcd. 12247, ¶ 26 (rel. Dec. 18, 2023); [89 FR 5098 (Jan. 26, 2024) = effective date announcement].
[7] Put differently, the FCC no believe a text *is* a call, otherwise it would not have to update its rules to separately include text messages.

-8-

Case 6:25-cv-03331-BCW    Document 8    Filed 12/09/25    Page 12 of 18

encompasses the three text messages Plaintiff claims to have received from Leadpoint. The answer is clearly "no."

The Court's "job is to interpret the words consistent with their 'ordinary meaning ... *at the time Congress enacted the statute*.'" *Sanzone v. Mercy Health*, 954 F.3d 1031, 1040 (8th Cir. 2020), *as corrected* (Apr. 9, 2020) (quoting *Perrin*, 444 U.S. at 42) (emphasis added). Interpretation of the relevant statutory language is easy here for two reasons. First, a "telephone call" could not have possibly encompassed text messaging in 1991 – because text messaging didn't exist then. Second, fast forward 34 years later, no ordinary person thinks a text message *is* a telephone call today. No ordinary user of the English language would write the sentence "Bill called Bob" intending to mean "Bill sent a text message to Bob," nor would any ordinary reader interpret the sentence in that manner. Nor would anyone receive a text message, and then ask the sender, "why did you call me?" Of course, this is all nonsensical – and that should both begin *and end* the Court's analysis. The ordinary meaning of the phrase "telephone call" does not encompass the three text messages Plaintiff claims to have received. And certainly the plain understanding of "telephone call" in 1991 did not include the not-yet-created text message. Plaintiff thus fails to state a claim on this basis alone.

Further, as also detailed above, Congress amended other sections of the TCPA to expressly include text messaging. *See* 47 U.S.C. § 227(e). In doing so, Congress specifically distinguished between "a call made using a voice service" from a "text message sent using a text message service." 47 U.S.C. § 227(e)(8)(A), (B) (emphasis added). "When Congress includes particular language in one section of a statute but omits it from a neighbor, we normally understand that difference in language to convey a difference in meaning." *HW Premium CBD, LLC v. Reynolds*, 742 F. Supp. 3d 885, 899 (S.D. Iowa 2024) (quoting *Bittner v. United States*,

-9-

Case 6:25-cv-03331-BCW    Document 8    Filed 12/09/25    Page 13 of 18

598 U.S. 85, 94 (2023)); *see also Fernandez v. Seaboard Marine Ltd.*, 135 F.4th 939, 958 (11th Cir. 2025) ("When Congress uses different terms, we expect that they hold different meanings, especially when the same meaning would render one of the terms superfluous.") (*citing Pulsifer v. United States*, 601 U.S. 124, 149 (2024) ("In a given statute . . . different terms usually have different meanings.").

If Congress intended for the term "telephone call" to include text messages in Section 227(c), the statutory delineation between calls and text messages in Section 227(e) would be meaningless. *See Fernandez*, 135 F.4th at 958; *see also See Trim v. Reward Zone USA LLC*, 76 F.4th 1157, 1162 (9th Cir. 2023) ("If voice calls encompassed text messages, the inclusion of the term text message would be surplusage, and Congress would have written the statute in a manner contrary to a basic canon of statutory construction, that a statute should be interpreted 'so as not to render one part inoperative.'"). Statutory interpretation principles make clear that Section 227(c)'s private right of action does not include text messages.

Indeed, this precise issue was just recently addressed in *Jones v. Blackstone Med. Servs., LLC*, No. 1:24-CV-01074-JEH-RLH, 2025 WL 2042764, at *5 (C.D. Ill. July 21, 2025), and the court correctly dismissed a Subsection (c) claim that was based exclusively on text messages, as "the fact remains that Section 227(c)(5) of the TCPA includes 'telephone call' and does not mention text messages or SMS messages, and nowhere does the TCPA define 'telephone call' to include text and/or SMS messages." *Id.* at *5 (further holding that the "Court confines itself to its assigned role which does not include legislating.").

Similarly, in an otherwise identical case dismissing a text message "do-not-call" claim, another court more recently ruled that "[t]he statutory text here *is* clear, and a text message is not a 'telephone call.'" *Davis v. CVS Pharmacy, Inc.*, No. 4:24-CV-477-AW-MAF, 2025 WL

2491195, at *1 (N.D. Fla. Aug. 26, 2025) (further holding that "Congress's use of the phrase 'telephone call or message' in a neighboring provision only undermines Davis's position. It shows that Congress does not use the term 'telephone call' to encompass all 'messages.'").

Likewise, another federal court also ruled that text messages fall outside Subsection (c) given the "fact that in common American English usage, a 'telephone call' and a 'text message' are separate and distinct forms of communication, [and] the term 'text message' appears elsewhere in the TCPA and related amendments, an appearance that confirms Congress understood the pertinent distinction and legislated mindful of the distinction." *Sayed v. Naturopathica Holistic Health, Inc.*, No. 8:25-CV-00847-SDM-CPT, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025); *see also State v. Valerio*, No. A-1-CA-41515, 2025 WL 1621551, at *4 (N.M. Ct. App. June 6, 2025) (noting that "the plain language of the statute, is 'calling' someone on the telephone," and refusing to apply state statute to text messages; "any broadening of the conduct proscribed by [the statute] is a matter for the Legislature, not this Court.").

Courts agree that a text message is not, and has never been, a "telephone call" in any ordinary, normal sense of the word. Plaintiff's complaint – which alleges receipt of three text messages and no telephone calls – should be dismissed with prejudice.

> **E.** **Plaintiff Independently Cannot Allege A Violation Of Any Regulation Prescribed Under Subsection (c)'s Time-Limited Grant of Rulemaking Authority**

As established above, Congress clearly placed a temporal limit on the regulations that could be adopted and enforced through Subsection (c)(5)'s private right of action. That is, unlike the much broader private right of action in Subsection (b) the TCPA, Congress, through Subsection (c), only authorized a very limited private right of action for (telephone calls) violating the regulations "prescribed under this subsection." And Congress unambiguously

-11-

directed that the only regulations contemplated to be prescribed under this Subsection are the following:

> Not later than 9 months after December 20, 1991, the Commission **shall conclude the rulemaking proceeding** initiated under paragraph (1) and shall prescribe regulations to implement methods and procedures for protecting the privacy rights described in such paragraph in an efficient, effective, and economic manner and without the imposition of any additional charge to telephone subscribers.

47 U.S.C. § 227(c)(2) (emphasis added).

Again, that's it. There is no private right of action to enforce other regulations that the FCC may have authority to adopt and enforce itself later. The text of the statute and the limited private right of action in Subsection (c) are unambiguous. And as established above, Plaintiff can still not get around the fact that the regulation she is ostensibly seeking to enforce was not adopted in the rulemaking proceeding concluded in 1992. Rather, her claim – such as it is – necessarily arises only out of regulations adopted in 2003[8] and 2023. *See* Compl. ¶ 57.

Thus, whatever statutory authority the FCC had to adopt its rules in 2003 and 2023, it does not override the plain language of the statute and create new private rights of action under Subsection 227(c)(5). As such, Plaintiff's sole claim that Leadpoint allegedly violated Section 64.1200(c)(1) carries no private right of action, and such "violations" can be enforced, if at all, solely by the FCC under its own enforcement authority. *See* 47 U.S.C. §§ 503-04. Thus,

---

[8] The FCC's 2003 TCPA Order does not provide for any private right of action for an alleged violation of Section 64.1200(c). In fact, the FCC's 2003 TCPA Order explicitly—and correctly—made no attempt to expand, and disavowed any opinion whatsoever about, the private right of action that Congress established in Subsection 227(c)(5) for the violations of the FCC's 1992 regulations. *See* 2003 TCPA Order ¶ 206 ("The Commission declines to make any determination about the specific contours of the TCPA's private right of action …. The Commission believes it is for Congress, not the Commission, to either clarify or limit this right of action."); *see also Sandoval*, 532 U.S. at 291 (language in a regulation cannot "conjure up a private cause of action that has not been authorized by Congress. Agencies may play the sorcerer's apprentice but not the sorcerer himself.").

Plaintiff's Complaint must be dismissed on this distinct legal ground.

## IV. CONCLUSION

For the foregoing reasons, Leadpoint respectfully requests that this Court grant its Motion and dismiss Plaintiff's Complaint with prejudice.

Dated: December 8, 2025

Respectfully submitted,

**ARENTFOX SCHIFF LLP**

*Ann H. MacDonald*
Ann. H. MacDonald (Mo. Bar #61544)
233 S. Wacker Dr., Suite 7100
Chicago, IL 60606
Phone: (312) 258-5548
Email: ann.macdonald@afslaw.com

Adam Bowser *(pro hac vice forthcoming)*
1717 K. Street, NW
Washington DC 20006
Phone: (202) 857-6126
Email: adam.bowser@afslaw.com

*Attorneys for Leadpoint, Inc.*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that, on December 8, 2025, she caused a true and correct copy of the foregoing to be served upon the persons listed below by email.

Tylor B. Whitham, Mo. Bar #69428
12120 State Line Road, Box 265
Leawood, Kansas 66209
phone: 816-522-3399
fax: 913-341-2807
tylor@whithamlawfirm.com

Anthony I. Paronich,
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

*Ann H. MacDonald*