UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| JENNIFER RUSH<br>*on behalf of herself and*<br>*others similarly situated*,<br><br>   Plaintiff,<br><br>v.<br><br>LEADPOINT, INC<br><br>   Defendant. | )<br>) Civil Action No.: 6:25-CV-03331-BCW<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF'S SUGGESTIONS IN OPPOSITION**
**TO THE DEFENDANT'S MOTION TO DISMISS**

# TABLE OF CONTENTS

Introduction .................................................................................................. 1

Factual and Legal Background ..................................................................... 3

Argument ...................................................................................................... 4

I. The Do Not Call List provisions in TCPA section 227(c) authorize the FCC to prohibit text messages ............................................................................................. 4

   A. The plain meaning of the word "call" includes text messages ....................................... 4

   B. That interpretation of the word "call" aligns section 227(c)'s private right of action with its substantive provisions ........................................................................................ 6

   C. Leadpoint's case for a narrower interpretation is unpersuasive ................................... 8

II. Any doubt that section 227(c) covers text messages should be resolved by deference to the FCC's longstanding interpretation ...................................... 11

III. Section 227(c) of the TCPA provides a private right of action for contacting a number on the Do Not Call Registry. The regulation sued under here was promulgated under Section 227(c) ......................................................................................................... 12

Conclusion .................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*Brock v. Pierce Cnty.*, 476 U.S. 253 (1986) ................................................................. 14

*Cacho v. Amity One Debt Relief*, 2024 WL 4594177 (W.D. Tex. Oct. 24, 2024) ..................... 14

*Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195 (S.D.N.Y. 2024) ................................ 7

*Davis v. CVS Pharmacy, Inc.*, 2025 WL 2491195 (N.D. Fla. 2025) ......................................... 8

*Dawson v. Porch.com*, 2024 WL 4765159 (W.D. Wash. 2024) .................................................. 10

*Diamond v. Chakrabarty*, 447 U.S. 303 (1980) ................................................................................ 8

*Ford v. NaturaLawn of Am., Inc.*, 2024 WL 3161762 (D. Md. June 25, 2024) .......................... 14

*Harriel v. Bealls, Inc.*, 2025 WL 2379617 (M.D. Fla. 2025) ......................................................... 7

*Henson v. Santander Consumer USA Inc.*, 582 U.S. 79 (2017) ................................................ 5, 9

*Hudson v. Palm Beach Tan, Inc.*, 2024 WL 4190513 (M.D.N.C. 2024) ...................................... 6

*Hulce v. Zipongo Inc.*, 132 F.4th 493 (7th Cir. 2025) .................................................................... 7

*Jones v. Blackstone Med. Servs.*, 792 F. Supp. 3d 894 (C.D. Ill. 2025) ........................................ 8

*Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365 (6th Cir. 2015) ......................................... 6

*Krakauer v. Dish Network, LLC*, 925 F.3d 643 (4th Cir. 2019) ..................................................... 4

*Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) ......................................................... 1, 11

*Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999 (N.D. Ill. 2010) ........... 2, 6, 8

*Mujahid v. Newity, LLC*, 2025 WL 3140725 (N.D. Ill. 2025) .............................................. 1, 6, 12

*New Prime, Inc. v. Oliveira*, 586 U.S. 105 (2019) ..................................................................... 2, 9

*Pepper v. GVG Capital LLC*, 677 F. Supp. 3d 638 (S.D. Tex. 2023) .......................................... 7

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009) ..................................... 1, 5, 7

*Squillacote v. United States*, 739 F.2d 1208 (7th Cir. 1984) ........................................................ 8

*Wilson v. Better Mortg. Corp.*, 2025 U.S. Dist. LEXIS 251694 (S.D.N.Y. Dec. 5, 2025)…5, 6, 10

*Wilson v. Medvidi, Inc.*, 2025 WL 2856295 (N.D. Cal. 2025) ................................ 1, 5, 6, 7, 8, 12

*Wilson v. Skopos Fin., LLC*, 2025 WL 2029274 (D. Or. 2025) ............................................. 1, 11

*Wis. Cent. Ltd. v. United States*, 585 U.S. 274 (2018) .................................................................. 8

**Statutes**

Telephone Consumer Protection Act, 47 U.S.C. § 227 ................................... 3, 5, 6, 7, 12, 13, 14

47 U.S.C. § 227(a)(4) ........................................................................................................ 1, 3, 7

47 U.S.C. § 227(b)(1)(A)(iii) ................................................................................................. 2, 6

47 U.S.C. § 227(c)(1) ............................................................................................... 1, 3, 12, 13, 14

47 U.S.C. § 227(c)(2) ......................................................................................................... 12, 13

47 U.S.C. § 227(c)(3)(F) ..................................................................................................... 3, 6, 14

47 U.S.C. § 227(c)(5) ......................................................................................................... 4, 12, 14

**Regulations**

47 C.F.R. § 64.1200(c)(2) ................................................................................................... 4, 12, 14

47 C.F.R. § 64.1200(e) ..................................................................................................... 4, 6, 11, 15

**Administrative Materials and Other Authorities**

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014 (2003) ........................................................................................................ 1, 6, 12, 14, 15

Webster's Third New International Dictionary (2002) ............................................................. 5, 7

Black's Law Dictionary (6th ed. 1990) ........................................................................................ 7

## Introduction

A 1991 law that bars vehicles from a park applies equally to Cybertrucks and to sedans, even though the former didn't exist at the time. So, too, here: The Telephone Consumer Protection Act prohibits sending text messages to phone numbers on the national Do Not Call List, just as it prohibits traditional voice calls.

Of course, text messaging didn't exist yet when the TCPA was passed in 1991, so Congress didn't have texts specifically in mind. But no matter: As both the FCC and courts have long recognized, the plain meaning of the word "call" in the TCPA encompasses any attempt to communicate by phone, "regardless of whether that call is communicated by voice or text." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009); *see* 18 FCC Rcd. 14014, 14115 ¶ 165 (2003). The TCPA's Do Not Call List rules therefore apply to text messages, and private individuals may enforce those rules in court. *See, e.g.*, *Wilson v. Better Mortg. Corp.*, 2025 U.S. Dist. LEXIS 251694 *12 (S.D. NY. December 5, 2025); *Mujahid v. Newity, LLC*, 2025 WL 3140725, at *2–3 (N.D. Ill. 2025); *Wilson v. Medvidi*, 2025 WL 2856295, at *2–4 (N.D. Cal. 2025); *Wilson v. Skopos Fin.*, *LLC*, 2025 WL 2029274, at *4–5 (D. Or. 2025).

The structure and purpose of the TCPA's Do Not Call List provisions reinforce that interpretation. The Do Not Call List exists "to protect residential telephone subscribers' privacy rights"—which are invaded by text messages no less than by voice calls. 47 U.S.C. § 227(c)(1). The statute directs the FCC to prohibit "telephone solicitations" to listed numbers, a term that is defined by the statute to include any "call or message … which is transmitted to any person" for a commercial purpose; that broadly inclusive language encompasses text messages even more clearly than the word "call" does standing alone. 47 U.S.C. § 227(a)(4); *see Medvidi*, 2025 WL 2856295, at *3. And the statute's Do Not Call List provisions expressly delegate "flexibility" to

1

"fill up the details" to the FCC. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395 (2024); *see* 47 U.S.C. § 227(c)(3)(A), (E).

Defendant Leadpoint, Inc. insists that no one would describe a text message as a "telephone call" in "ordinary conversation." But that's not how statutory interpretation works. Courts look to a statute's ordinary "meaning at the time of … adoption" to interpret the law, not "modern intuition." *New Prime, Inc. v. Oliveira*, 586 U.S. 105, 114 (2019). In fact, modern conversational parlance can be downright misleading when times have changed. *See id.* at 114–16. And Leadpoint also has no answer for the TCPA's nearby autodialer provisions, where the word "call" is used to describe written messages received on a pager—the most analogous technology to text messaging that existed in 1991. *See* 47 U.S.C. § 227(b)(1)(A)(iii). If a text "call" to a pager can violate the TCPA, a text "call" to a cell phone can too. *See Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1004–05 (N.D. Ill. 2010).

Defendant couples that argument with a second, even more disruptive theory: that Congress allegedly "froze" enforceable DNC regulations in 1992, such that privately enforceable "regulations prescribed under this subsection" do not include later-adopted FCC DNC rules as telemarketing and communications technology evolved. Congress directed the FCC to implement a DNC framework and provided a private right of action for calls made "in violation of the regulations prescribed under this subsection." § 227(c)(5). Defendant's reading would mean the private right of action applies only to some initial rule set finalized by an early deadline, and not to the operative DNC rules that have governed telemarketing for many years and have been applied in courtrooms nationwide. That reading would destabilize the DNC regime and would make § 227(c)(5) largely obsolete in modern communications, contrary to the statute's evident privacy-protective design. Indeed, that's likely why no Court has ever adopted

2

the Defendant's argument.

At bottom, this case does not require the Court to decide novel technology policy. It requires the Court to apply ordinary statutory interpretation principles to a familiar consumer protection law. Plaintiff has plausibly alleged that Leadpoint made repeated telemarketing solicitations to a DNC-registered number without permission. Leadpoint's attempt to avoid liability by relabeling its solicitations as "texts, not calls" elevates form over function and would frustrate the statute's purpose. The Motion should be denied.

## Factual and Legal Background

Section 227(c) of the Telephone Consumer Protection Act empowers the FCC to decide whether to create a national Do Not Call List, and to determine the rules that will govern it. *See* 47 U.S.C. § 227(c)(1)–(4). The guiding purpose of a Do Not Call List is "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." *Id.* § 227(c)(1). The key operative term is "telephone solicitations," which are defined in the TCPA as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods or services, which is transmitted to any person." *Id.* § 227(a)(4). That definition is "more concerned with the purpose of the telephone communications [that are prohibited] than the form in which those communications are transmitted." *Wilson v. Medvidi, Inc.*, 2025 WL 2856295, at *3 (N.D. Cal. 2025).

Finally, section 227(c)(5) provides for private enforcement of the FCC's Do Not Call List rules. It grants an express private right of action in federal court to any "person who has received more than one telephone call within any 12-month period … in violation of the regulations." 47 U.S.C. § 227(c)(5). That is "a straightforward provision designed to achieve a straightforward result"—to enable "each person to protect his own personal rights" under the Do Not Call List

3

rules. *Krakauer v. Dish Network, LLC*, 925 F.3d 643, 650 (4th Cir. 2019).

The FCC's implementing regulations include 47 C.F.R. § 64.1200(c)(2), which generally prohibits "any telephone solicitation to … [a] residential telephone subscriber who has registered his or her telephone number" on the Do Not Call List. The FCC has also determined in a series of orders and, more recently, in a formal regulation that this rule applies to "text messages to wireless telephone numbers." 47 C.F.R. § 64.1200(e).

Plaintiff's cellular number has been registered on the National Do-Not-Call Registry since January 1, 2008. ECF No. 1 ¶ 11. Plaintiff alleges Leadpoint sent at least three promotional text messages to that number on August 25, September 9, and September 19, 2025, without Plaintiff's express invitation or permission. Id. ¶ 21.

## Argument

**I.     The Do Not Call List provisions in TCPA section 227(c) authorize the FCC to prohibit text messages.**

Leadpoint contends that a single use of the phrase "telephone call" in section 227(c)(5)'s private right of action means that the Do Not Call List rules cannot apply to text messages. That's incorrect. The plain meaning of the word "call," long recognized by other courts and the FCC, refutes that argument. The statutory context confirms that a text can be a "call." And Leadpoint's arguments in support of its contrary interpretation do not withstand scrutiny.

**A.     The plain meaning of the word "call" includes text messages.**

To interpret a statutory term, courts look to its "ordinary meaning" when the statute was enacted. Here, the "ordinary, contemporary, common meaning" of the word "call" in this context is "'to communicate with or try to get into communication with a person by a telephone.'" *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953–54 & n.3 (9th Cir 2009) (quoting

4

*Webster's Third New International Dictionary* (2002)).[1] Consistent with that approach, "the ordinary public meaning of 'telephone call' when the TCPA was enacted in 1991 was a communication made by telephone." *Wilson v. Better Mortg. Corp.*, 2025 U.S. Dist. LEXIS 251694, at *12 (S.D.N.Y. Dec. 5, 2025). And texting is, of course, a means of communicating with someone by telephone. So, the established definition of "telephone call" readily encompasses texts. *See, e.g.*, *Wilson v. Medvidi*, 2025 WL 2856295, at *2 (N.D. Cal. 2025); *Mujahid v. Newity, LLC*, 2025 WL 3140725, at *2 (N.D. Ill. 2025).

The established meaning of the word "call" is especially clear in the nearby autodialer provisions in section 227(b) of the original TCPA. Absent contrary evidence, a statutory word or phrase is presumed to bear a consistent meaning throughout a statute. *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 85 (2017). The word "call" is used extensively in the provisions of the statute that prohibit automatic dialing technology and robocalls, which were also part of the statute when it was first enacted in 1991. Most notably, section 227(b) prohibits using autodialer or robocall technology "to make any call … to any telephone number assigned to a paging service." 47 U.S.C. § 227(b)(1)(A)(iii). A typical paging device in the early 1990s would have displayed an incoming message as written text—usually displaying a phone number to call.[2] So the use of the word "call" in connection with pagers in section 227(b) establishes "that the term 'call' cannot invoke only the common usage … in which a 'call' refers to oral

---

[1] This basic definition of the word "call," which is the relevant one given the context and the word's pairing with "telephone" in section 227(c)(5), appears in many dictionaries from around the time of the TCPA's passage. *See, e.g.*, *Random House Webster's College Dictionary* (1991) ("to communicate or try to communicate with by telephone"); *Oxford English Dictionary* (2d ed. 1989) ("a summons or communication by telephone").

[2] *See, e.g.*, Paging Network, Inc., Annual Report, at 8 (1991), https://digital.library.mcgill.ca/images/hrcorpreports/pdfs/6/639549.pdf (noting that 92 percent of the company's pagers could "transmit a numeric message such as a telephone or account number").

5

communication between two parties via telephone." *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1005 (N.D. Ill. 2010).

Courts have therefore "routinely found that the phrase 'call' in subsection (b) … includes text messages." *Hudson v. Palm Beach Tan, Inc.*, 2024 WL 4190513, at *7 n.6 (M.D.N.C. 2024); *see, e.g.*, *Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370 (6th Cir. 2015). And that "supports the interpretation that the term 'call' as used in § 227(c) also encompasses 'text messages.'" *Mujahid*, 2025 WL 3140725, at *2. As *Wilson* recognized, "limiting § 227(c)'s reach to telephone voice calls while § 227(b) covers voice as well as text messages would create an irrational asymmetry at odds with the statute's text and structure." *Wilson v. Better Mortg. Corp.*, 2025 U.S. Dist. LEXIS 251694, at *19 (S.D.N.Y. Dec. 5, 2025).

Likewise, the FCC determined as early as 2003 that, when the TCPA says "call," it "encompasses both voice calls and text calls to wireless numbers." 18 FCC Rcd. 14014, 14115 ¶ 165 (2003). The FCC first announced its interpretation of the word "call" in the context of the TCPA's autodialer provisions, presumably because those provisions of the statute use the word more extensively. *See Medvidi*, 2025 WL 2856295, at *3. But the FCC has since confirmed, including in a formal regulation, that the meaning of the word "call" is the same in the Do Not Call List context. *See* 47 C.F.R. § 64.1200(e); 38 FCC Rcd. 12247, 12256–57 ¶ 26 (2023); *Hernandez*, 2018 WL 6830220, at *1 ¶ 3 (F.C.C. Dec. 21, 2018). That interpretation reflects "the plain meaning of the statutory text as it has been understood by consumers, the FCC, and courts since the TCPA's passage." *Medvidi*, 2025 WL 2856295, at *3.

**B. That interpretation of the word "call" aligns section 227(c)'s private right of action with its substantive provisions.**

Reading section 227(c)(5)'s private right of action in context with the substantive Do Not Call List provisions of section 227(c) further confirms that text messages are covered.

6

To see why, start with the core of section 227(c)—its prohibition on "making or transmitting a telephone solicitation to the telephone number of any subscriber" on the Do Not Call List. 47 U.S.C. § 227(c)(3)(F). Text messages, of course, are "ma[de] or transmitt[ed]" to a "telephone number." *Id.* And it is well-established that the residential telephone "subscriber[s]" protected by the Do Not Call List include cell phone subscribers. *See, e.g.*, *Harriel v. Bealls, Inc.*, 2025 WL 2379617, at *2 (M.D. Fla. 2025); *Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 203 & n.4 (S.D.N.Y. 2024) (collecting cases).

The term "telephone solicitation" also clearly encompasses text messages. The statute expressly defines a "telephone solicitation" to mean "a telephone *call or message* … which is transmitted to any person" for commercial purposes. 47 U.S.C. § 227(a)(4) (emphasis added). That reference to a "call or message" covers texts even more clearly than the word "call" standing alone. As explained above, "the ordinary, contemporary, and common meaning" the word "call" in the TCPA includes text messages. *Satterfield*, 569 F.3d at 953–54 & n.3; *see supra*, Part I.A. And contemporary definitions of the word "message" do too—a message was "[a]ny notice, word, or communication, *no matter the mode and no matter how sent*." *Message*, *Black's Law Dictionary* (6th ed. 1990) (emphasis added).[3]

More generally, the definition of "telephone solicitation" focuses not on a communication's form but on whether it has "the purpose of encouraging" various kinds of commercial transactions. 47 U.S.C. § 227(a)(4); *see, e.g.*, *Hulce v. Zipongo Inc.*, 132 F.4th 493 (7th Cir. 2025) (Do Not Call List liability turned on whether a text message had the requisite

---

[3] *See also Message*, *Random House Webster's New College Dictionary* (1st ed. 1991) ("a communication delivered *in writing*, speech, by means of signals, etc.") (emphasis added); *Message*, *Oxford English Dictionary* (2d ed. 1989) ("an oral *or written* communication sent from one person to another") (emphasis added).

7

commercial purpose). At the same time, the statute uses broad, inclusive language to describe how such a communication might be conveyed—the FCC is directed to prohibit "making *or* transmitting" a telephone solicitation to "any" listed number, and a telephone solicitation is a "call *or* message" that is "transmitted to *any* person." 47 U.S.C. § 227(a)(4), (c)(3)(F) (emphases added). Congress presumably used all that broad and disjunctive language to capture a wide range of communication mediums, including text messages. *See Medvidi*, 2025 WL 2856295, at *3 (explaining that the "telephone solicitation" definition "makes clear that Congress was more concerned with the purpose of the telephone communications … than the form in which those communications are transmitted"); *Pepper v. GVG Capital LLC*, 677 F. Supp. 3d 638, 643 (S.D. Tex. 2023) (similar).

Finally, the purpose of the Do Not Call List provisions further supports that interpretation. Congress's stated goal was "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). And nothing in the TCPA suggests that Congress thought "oral messages were more invasive or objectionable than written ones." *Medvidi*, 2025 WL 2856295, at *3.

C. **Leadpoint's case for a narrower interpretation is unpersuasive.**

Leadpoint would have this Court interpret the Do Not Call List provisions more narrowly, insisting that the words "telephone call" in section 227(c)(5) can only mean "voice call," and therefore the statute categorically excludes text messages. Its arguments mainly rely on two recent district court cases, *Davis v. CVS Pharmacy, Inc.*, 2025 WL 2491195 (N.D. Fla. 2025), and *Jones v. Blackstone Medical Services*, 792 F. Supp. 3d 894 (C.D. Ill. 2025), *appeal docketed*, No. 25-2398 (7th Cir. Aug. 12, 2025). But none of the arguments made by Leadpoint or by those cases is persuasive.

Leadpoint (echoing *Jones*) insists that "telephone call" cannot encompass text messages because text messaging did not yet exist in 1991. *see Jones*, 2025 WL 2042764, at *4.

That's not how statutory interpretation works. It's true that text messaging did not exist in 1991, so Congress didn't have texting specifically in mind. But statutes are not "confined to the particular applications contemplated by the legislators." *Diamond v. Chakrabarty*, 447 U.S. 303, 315–16 (1980). "While every statute's *meaning* is fixed at the time of enactment," it is commonplace that "new *applications* may arise in light of changes in the world." *Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 284 (2018). That's why a 1991 law that said "no vehicles in the park" would prohibit Cybertrucks and Priuses, not just Mustangs and Corollas. *See Squillacote v. United States*, 739 F.2d 1208, 1213 (7th Cir. 1984) (similar example with Volkswagens).

The same is true here. "In determining whether section 227(c) applies to text messages, the Court looks to the plain meaning of the text rather than the specific facts or technology that Congress may have had in mind in 1991 at the time of the TCPA's passage." *Medvidi*, 2025 WL 2856295, at *2. The 1991 meaning of "call"—which "refers to both oral and written communications"—is what matters. *Id*.; *see Lozano*, 702 F. Supp. 2d at 1007.

Leadpoint's introduction also leads with that in ordinary conversation it sounds odd to refer to a text message as a telephone call. *Jones* and *Davis* also rely on that same intuition—both courts found it impossible to read "call" in anything but the familiar colloquial sense, and so concluded that the "analysis begins and ends there." *Davis*, 2025 WL 2491195, at *1. But statutory interpretation does not turn on modern colloquial usage. To the contrary, when language has evolved since a statute's enactment, current usage can be misleading. For example, in *New Prime, Inc. v. Oliveira*, the Supreme Court explained that the statutory term "contracts of employment" in the Federal Arbitration Act nowadays "might call to mind only agreements

9

between employers and employees," and thus exclude independent contractors. 586 U.S. 105, 114 (2019). But that "modern intuition" did not match the "evidence of the term's meaning at the time of the Act's adoption," which revealed that "'contract of employment' usually meant nothing more than an agreement to perform work." *Id*. The Supreme Court therefore held that the statutory exception at issue reached not just conventional "employees," as modern parlance might suggest, but also modern independent contractors, as definitions from the time of the statute's enactment showed. *See id.* at 114–16. *New Prime* illustrates that when a mismatch arises between current intuitions and the original meaning at the time of enactment, the latter controls—not (as Leadpoint's cases put it) how an "ordinary person would think of a text message" today, *Davis*, 2025 WL 2491195, at *1, or "today's American parlance," *Jones*, 2025 WL 2042764, at *4. This is exactly the interpretive error courts warn against. In rejecting the "ordinary parlance" approach, Judge Engelmayer explained that it "improperly substitutes the present-day meaning of 'telephone call' for the ordinary public meaning of that term when § 227(c) was enacted in 1991." *Wilson v. Better Mortg. Corp.*, 2025 U.S. Dist. LEXIS 251694, at *14 (S.D.N.Y. Dec. 5, 2025).

Leadpoint also has no good answer for nearby uses of the word "call" in section 227(b), the autodialer provisions of the original TCPA. Leadpoint and its cases do not dispute that "call" covers text messages in the autodialer provisions. Nor could they: The meaning of "call" is especially clear in section 227(b) because it's used there to describe a (typically text-focused) transmission to a "paging service." *See supra*, Part I.A. In response, all Leadpoint's cases say is that section 227(b) is a different provision and could in theory be broader than section 227(c). *See Jones*, 792 F. Supp. 3d at 900–01; *Davis*, 2025 WL 2491195, at *2.

What's missing, however, is any credible reason to think that "call" *actually does* mean

something broader in section 227(b) than in section 227(c). Absent good reason to think otherwise, a statutory term is presumed to have a consistent meaning throughout a statute. *See Henson*, 582 U.S. at 85. Leadpoint doesn't say why the meaning of "call" would differ between the two provisions. Nor does *Jones*. The only possible distinction comes from *Davis*, which notes that 227(b) says it's unlawful to make "any call" to various kinds of devices using an autodialer, whereas section 227(c) refers to a prohibited "telephone call." *See* 2025 WL 2491195, at *2. But, as explained above, the word "telephone" isn't doing any work here. And "any" is hardly unique to section 227(b)(1)(A); section 227(c) uses similarly expansive modifiers, requiring the FCC to "prohibit *any* person from making or transmitting a telephone solicitation to the telephone number of *any* subscriber included" in the Do Not Call List. 47 U.S.C. § 227(c)(3)(F) (emphases added).

To the contrary, reading the word "call" differently in section 227(c)(5) than in section 227(b) would make no sense. Again, Congress would not have *excluded* text messages in section 227(c)(5) by using a term that in section 227(b) *includes* them. *See supra*, Part I.C.2.a. So "there is no reason to believe that ['call'] has a different meaning when used in the do-not-call provisions." *Dawson v. Porch.com*, 2024 WL 4765159, at *5 (W.D. Wash. 2024).

**II.    Any doubt that section 227(c) covers text messages should be resolved by deference to the FCC's longstanding interpretation.**

The statute is best read to treat telemarketing texts as "calls" for purposes of § 227(c) and the FCC's Do-Not-Call regulations. *See supra Part I.* But even if there were uncertainty, Congress expressly delegated to the FCC the authority to implement an effective DNC framework to protect subscriber privacy. *See* 47 U.S.C. § 227(c)(1), (c)(3)(A), (E). Under *Loper Bright*, courts still respect agency interpretations where Congress has left the agency "flexibility" to "fill up the details" of a statutory scheme. 603 U.S. 369, 394–95 (2024). Courts applying

11

*Loper Bright* have recognized that § 227(c) is such a delegation. *See Wilson v. Skopos Fin., LLC*, 2025 WL 2029274, at *4 (D. Or. 2025).

The FCC has consistently interpreted "call" to include text messages and has expressly applied the DNC rules to "text messages to wireless telephone numbers," now codified at 47 C.F.R. § 64.1200(e). *See* 18 FCC Rcd. 14014, 14115 ¶ 165 (2003); 47 C.F.R. § 64.1200(e). At minimum, that longstanding, consistent, and reasoned interpretation is persuasive and confirms the statute's correct application here. *See Medvidi,* 2025 WL 2856295, at *3; *Mujahid,* 2025 WL 3140725, at *3.

### III. Section 227(c) of the TCPA provides a private right of action for contacting a number on the Do Not Call Registry. The regulation sued under here was promulgated under Section 227(c).

Defendant here posits something remarkable: every court and the thousands of decisions to have considered the propriety of the TCPA's private right of action for calls to numbers on the National Do Not Call Registry all got it wrong, since the TCPA's authorization for creation of the National Do Not Call Registry (allegedly) expired in 1992 and was not adequately reinstated by any subsequent authority, including Congress's mandate in 2003. That approach is at odds with the plain statutory history, Congressional intent, and the text of the relevant provisions, and is further contradictory to the Defendant's own canons of construction.

Defendant's theory would effectively nullify decades of National Do-Not-Call enforcement and cannot be reconciled with the statutory text. Congress created an express private right of action for a person who receives more than one "telephone call" within 12 months "*in violation of the regulations prescribed under this subsection.*" 47 U.S.C. § 227(c)(5) (emphasis added). The regulation Plaintiff invokes—47 C.F.R. § 64.1200(c)(2)—is the FCC's core National Do-Not-Call rule prohibiting "telephone solicitations" to subscribers who have

12

registered their numbers on the national registry. Defendant's position would mean that, notwithstanding the statute's express authorization for private enforcement of the FCC's § 227(c) regulations, the central national registry rule is somehow not enforceable "under this subsection." That reading is not plausible. It would convert § 227(c)(5) from a straightforward enforcement mechanism into an historical relic and would undermine the privacy-protective design Congress expressly announced in § 227(c)(1).

Defendant's argument rests on a misreading of § 227(c)(2), which directed the FCC to "conclude" an initial rulemaking within nine months after December 20, 1991. 47 U.S.C. § 227(c)(2). That provision sets a timetable for initial implementation; it does not impose a permanent prohibition on later rulemaking or on later refinements to the FCC's do-not-call protections as technology and telemarketing practices changed. Nothing in § 227(c) states that the FCC's authority to adopt or revise do-not-call regulations expires after the initial rulemaking deadline, and nothing suggests Congress meant to bar private enforcement of later implementing regulations that fall squarely within § 227(c)'s grant of authority to protect subscriber privacy. To the contrary, § 227(c) is framed as an ongoing privacy-protection program, directing the Commission to consider the "need to protect" subscriber privacy and to be guided by effectiveness and efficiency in accomplishing that purpose. *See* 47 U.S.C. § 227(c)(1). Defendant's interpretation would add an expiration clause that Congress did not write.

Congress often uses "shall" to set an agency timetable without implying that missing the date extinguishes the agency's underlying statutory authority. Nothing in § 227(c)(2) purports to withdraw the Commission's power after the nine-month period, and Congress did not specify any consequence for late action. Reading § 227(c)(2) as a permanent bar would convert a scheduling directive into a silent repeal of the very privacy-protection authority Congress

13

simultaneously conferred in § 227(c)(1) and (c)(3) — an interpretation disfavored under ordinary interpretive principles. *See, e.g., Brock v. Pierce Cnty.,* 476 U.S. 253, 259–66 (1986) (agency's failure to meet a statutory deadline did not divest it of authority absent a clear statement of consequence). Defendant's theory thus fails even on its own premise: a timing instruction does not "freeze" a regulatory program Congress framed as ongoing and effectiveness-driven. See 47 U.S.C. § 227(c)(1)(A), (E).

Most importantly, the FCC itself expressly grounded the National Do-Not-Call registry rules in § 227(c). In the FCC's 2003 Report and Order adopting the national registry, the Commission stated: "*Pursuant to our authority under section 227(c)*, we adopt a national do-not-call registry that will provide residential consumers with a one-step option to prohibit unwanted telephone solicitations." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14034 (2003) (emphasis added). The National Registry rule at § 64.1200(c)(2) was adopted under § 227(c), and § 227(c)(5) provides a private right of action for violations of regulations prescribed under § 227(c).

Courts have likewise treated the National Do-Not-Call registry regulation as an implementing rule promulgated under § 227(c) and have rejected the notion that the FCC lacked authority to adopt or maintain the registry after the initial 1992 timeframe. *See Ford v. NaturaLawn of Am., Inc.,* 2024 WL 3161762, at *3 (D. Md. June 25, 2024) (recognizing § 227(c)(3) authority and noting that "[t]he FCC did so when it created the national 'Do-Not-Call' registry," codified at 47 C.F.R. § 64.1200(c)(2)); *Cacho v. Amity One Debt Relief*, 2024 WL 4594177, at *4 (W.D. Tex. Oct. 24, 2024) (same).

The prohibition in § 64.1200(c)(2) regulates "telephone solicitations" and implements the national registry — the precise subject matter Congress assigned to § 227(c): protecting

14

subscriber privacy and directing the Commission to prohibit solicitations to numbers on a do-not-call list. See 47 U.S.C. § 227(c)(1), (c)(3)(F). That fit matters because § 227(c)(5) authorizes private enforcement for violations of regulations prescribed "under this subsection." Defendant's theory would require the Court to treat the core national registry rule as somehow *not* a § 227(c) regulation, even though it implements § 227(c)'s exact command and was adopted pursuant to § 227(c) in the FCC's 2003 Order. 18 FCC Rcd. at 14034. The better reading is the straightforward one: § 64.1200(c)(2) is a § 227(c) implementing rule, and § 227(c)(5) is the cause of action Congress provided to enforce it.

Those decisions align with the common-sense understanding reflected across TCPA do-not-call litigation: § 64.1200(c)(2) is a § 227(c) regulation, and § 227(c)(5) is the enforcement mechanism Congress provided for violations of the FCC's § 227(c) rules. Defendant's attempt to recharacterize decades of do-not-call jurisprudence as jurisdictionally mistaken should be rejected, and Plaintiff's claim should proceed.

## Conclusion

Plaintiff has plausibly alleged that Leadpoint sent multiple telemarketing text messages to Plaintiff's number despite its longstanding registration on the National Do-Not-Call Registry and without express invitation or permission. The TCPA's text, structure, and purpose confirm that "calls" and "telephone solicitations" under § 227(c) encompass telemarketing texts, and the FCC's implementing regulations expressly apply the DNC rules to "text messages to wireless telephone numbers." Leadpoint's attempt to create a text-message loophole—and its separate "1992 freeze" theory that would destabilize decades of DNC enforcement—are inconsistent with the statute and the FCC's rulemaking adopted pursuant to § 227(c). For these reasons, the Court should deny Defendant's Motion to Dismiss in its entirety.

Dated: December 17, 2025					PLAINTIFF, on behalf of herself
								and others similarly situated,



						By: */s/ Anthony Paronich*
						Anthony I. Paronich, *Pro Hac Vice*
						Paronich Law, P.C.
						350 Lincoln Street, Suite 2400
						Hingham, MA 02043
						(508) 221-1510
						anthony@paronichlaw.com