# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| JENNIFER RUSH,<br>*On behalf of herself and others similarly situated*,<br><br>    Plaintiff,<br><br>  v.<br><br>LEADPOINT, INC.,<br><br>    Defendant. | No. 6:25-CV-03331-BCW |

**DEFENDANT'S SUGGESTIONS IN REPLY IN SUPPORT OF
ITS MOTION TO DISMISS CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................ 1

II. A WRITTEN TEXT MESSAGE COULD NOT HAVE BEEN A TELEPHONE CALL AT ANY POINT SINCE 1991 ................................................................... 2

    A. Plaintiff's Reliance On Subsection (b) Is Ultimately Self-Defeating .................... 2

    B. Congress Removed Any Doubt That Text Messages Are Not Telephone Calls ........................................................................................................................ 4

    C. Plaintiff Misconstrues The Multiple Cases Holding That There Is No Private Right Of Action For Text Messages Under Subsection (c) ...................... 6

    D. Plaintiff Does Not Dispute That The Regulations She Is Attempting To Enforce Do Not Fall Under The Plain Language Of The Regulations Enforceable Through Subsection (c)'s Private Right of Action ........................... 8

CONCLUSION ........................................................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alexander v. Sandoval*,
    532 U.S. 275 (2001) ..................................................................................................... 6

*Dilanyan v. Hugo Boss Fashions, Inc.*,
    No. 2:25-CV-05093-JLS-BFM, 2025 WL 3549868 (C.D. Cal. Dec. 3, 2025) ............. 7

*Facebook, Inc. v. Duguid*,
    592 U.S. 395 (2021) .................................................................................................. 2, 8

*Jones v. Blackstone Medical Services, LLC*,
    No. 1:24-CV-01074-JEH-RLH, 2025 WL 2042764 (C.D. Ill. July 21, 2025) .......... 2, 7

*Loper Bright Enterprises v. Raimondo*,
    603 U.S. 369 (2024) .................................................................................................. 2, 5

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*,
    606 U.S. 146 (2025) .................................................................................................. 2, 5

*New York Legal Assistance Grp. v. Bd. of Immigr. Appeals*,
    987 F.3d 207 (2d Cir. 2021) ......................................................................................... 5

*U.S. ex rel. O'Keefe v. McDonnell Douglas Corp.*,
    132 F.3d 1252 (8th Cir. 1998) ...................................................................................... 9

*Stone v. I.N.S.*,
    514 U.S. 386 (1995) ...................................................................................................... 5

*Trim v. Reward Zone USA LLC*,
    76 F.4th 1157 (9th Cir. 2023) ....................................................................................... 7

*Union Pac. R.R. Co. v. Surface Transportation Bd.*,
    863 F.3d 816 (8th Cir. 2017) ........................................................................................ 9

**Statutes**

5 U.S.C. § 706(2)(C) ............................................................................................................ 9

47 U.S.C. § 227(a)(4) ........................................................................................................... 4

47 U.S.C. § 227(b)(1)(C) ................................................................................................. 1, 3

47 U.S.C. § 227(c)(2) ........................................................................................................... 8

**Other Authorities**

47 C.F.R. §64.1200(d) ...................................................................................................9

47 C.F.R. § 64.1200(e)...................................................................................................6

## I. INTRODUCTION

Notably absent from Plaintiff's Suggestions in Opposition is any contention that anyone would have referred to a "text message" as a "telephone call" *at any point in history* under the plain and ordinary meanings of these distinct terms. In fact, Plaintiff concedes that no one would refer to a text message as a call today. And she simply ignores the fact that *Congress* did not believe that a text message is a telephone call when it amended the TCPA in 2018 to expressly add this distinct form of communication to Subsection (e) of the TCPA but did ***not*** update Subsection (c)'s private right of action to include text messages. Mem. at 6. In short, the Court does not need to guess whether a text message *is* a telephone call under the TCPA, as amended, because Congress clearly answered that in the negative in 2018.

Instead, Plaintiff's primary counter is that, while texting didn't exist when Congress originally enacted the TCPA, the plain and ordinary meaning of a "telephone call" in 1991 would have embraced "**any attempt** to communicate by phone." Opp. at 1 (emphasis added). But this argument is verifiably false – both historically and under the plain text of the TCPA. Indeed, anyone who lived during the 1980s and 1990s should easily remember that there *was* an ubiquitous form of written phone-to-phone communication when Congress enacted the TCPA: faxing.[1] And that form of written phone-to-phone communication was – and still is – separately and distinctly regulated from telephone calls in the TCPA. *See* 47 U.S.C. § 227(b)(1)(C) (prohibiting the use of "any telephone facsimile machine" – which can "transmit that signal over a regular telephone line" – to send "unsolicited advertisements."). And no one – then or now – would wave a fax around and say, "I got your telephone call!" That would be absurd, just as it

---

[1] *See* https://en.wikipedia.org/wiki/Fax (note second picture of 1990 combined telephone and fax machine that allowed users to make telephone calls (voice) and send facsimiles (written text) between such telephonic devices – the "smartphones" of their day.).

would be to refer to a text message as a telephone call at any point in time.

Ultimately, Plaintiff's Opposition is an implicit invitation for the Court to rewrite the plain language of Subsection (c) of the TCPA and its private right of action expressly limited to telephone calls. And as the Supreme Court recently and unanimously held in the context of Subsection (b) of the same statute, a court "cannot rewrite the TCPA to update it for modern technology." *Facebook, Inc. v. Duguid*, 592 U.S. 395, 397 (2021) ("Duguid's quarrel is with Congress, which did not define an autodialer as malleably as he would have liked."); *see also Jones v. Blackstone Medical Services, LLC*, No. 1:24-CV-01074-JEH-RLH, 2025 WL 2042764, at *5 (C.D. Ill. July 21, 2025) ("It is for Congress to respond to the issues presented in this case and to address the realities of today's technology . . . ."). The Court should likewise reject this invitation to amend the TCPA yet again – when Congress chose not to in 2018 or otherwise.

Plaintiff must allege receipt of a "telephone call." She does not, because a text message is not, and never was, a telephone call. The Complaint should be dismissed with prejudice.

## II.  A WRITTEN TEXT MESSAGE COULD NOT HAVE BEEN A TELEPHONE CALL AT ANY POINT SINCE 1991

Leadpoint established that the private right of action in Subsection (c) is – and should have always been – strictly limited to the receipt of telephone calls. Mem. at 5-7, 9-11. And after the Supreme Court's *Loper Bright* and *McLaughlin Chiropractic* decisions, which confirmed that courts should independently decide what the meaning of a law is as if no agency were involved, multiple courts have reached the same common sense holding the Court should reach here: a text message is not a telephone call, and never was. Mem. at 4-5.

### A.  Plaintiff's Reliance On Subsection (b) Is Ultimately Self-Defeating

For her part, Plaintiff begins with the inapposite analogy that Cybertrucks should not be regulated differently than sedans. Opp. at 1. That analogy would be appropriate here if

-2-
Case 6:25-cv-03331-BCW    Document 14    Filed 12/31/25    Page 6 of 15

would be to refer to a text message as a telephone call at any point in time.

Ultimately, Plaintiff's Opposition is an implicit invitation for the Court to rewrite the plain language of Subsection (c) of the TCPA and its private right of action expressly limited to telephone calls. And as the Supreme Court recently and unanimously held in the context of Subsection (b) of the same statute, a court "cannot rewrite the TCPA to update it for modern technology." *Facebook, Inc. v. Duguid*, 592 U.S. 395, 397 (2021) ("Duguid's quarrel is with Congress, which did not define an autodialer as malleably as he would have liked."); *see also Jones v. Blackstone Medical Services, LLC*, No. 1:24-CV-01074-JEH-RLH, 2025 WL 2042764, at *5 (C.D. Ill. July 21, 2025) ("It is for Congress to respond to the issues presented in this case and to address the realities of today's technology . . . ."). The Court should likewise reject this invitation to amend the TCPA yet again – when Congress chose not to in 2018 or otherwise.

Plaintiff must allege receipt of a "telephone call." She does not, because a text message is not, and never was, a telephone call. The Complaint should be dismissed with prejudice.

## II.  A WRITTEN TEXT MESSAGE COULD NOT HAVE BEEN A TELEPHONE CALL AT ANY POINT SINCE 1991

Leadpoint established that the private right of action in Subsection (c) is – and should have always been – strictly limited to the receipt of telephone calls. Mem. at 5-7, 9-11. And after the Supreme Court's *Loper Bright* and *McLaughlin Chiropractic* decisions, which confirmed that courts should independently decide what the meaning of a law is as if no agency were involved, multiple courts have reached the same common sense holding the Court should reach here: a text message is not a telephone call, and never was. Mem. at 4-5.

### A.  Plaintiff's Reliance On Subsection (b) Is Ultimately Self-Defeating

For her part, Plaintiff begins with the inapposite analogy that Cybertrucks should not be regulated differently than sedans. Opp. at 1. That analogy would be appropriate here if

Leadpoint was arguing that voice calls using VoIP technology – the "power" source – shouldn't be regulated like traditional voice calls transmitted over copper wires. *That* would be elevating "form over function." *Id.* at 3. But that is not Leadpoint's argument at all, or the issue facing the Court. Rather, the more appropriate analogy here is that Plaintiff wants to regulate SpaceX rockets the same as *both* Cybertrucks and Cadillacs – under a law that was not only passed when spaceships existed but distinctly regulates them. Opp. at 5.

Indeed, Plaintiff's primary argument is based on the false premise that the closest form of communication to texting in 1991 was paging, and the Court should therefore look to Subsection (b)'s regulation of "autodialers"[2] and "robocalls" as the closest proxy to Congressional intent in 1991. But as noted at the outset, Subsection (b) separately regulates the written telephonic communications that *existed in 1991* – the "unsolicited advertisement[s]" that could be sent to other telephone lines using "telephone facsimile machine[s]." 47 U.S.C. § 227(b)(1)(C). And Congress distinctly and comprehensively addressed such unsolicited *written* advertisements under Subsection (b)(1)(C). Of course, it would be nonsensical to argue that faxes *are* telephone calls under the plain and ordinary meaning of those terms used **at the time** of the TCPA's enactment – or at any time since. Indeed, Congress would have no reason to separately enact Subsection (b)(1)(C) if unsolicited written advertisements sent "over a regular telephone line," *id.* § 227(a)(3), were already covered by Subsection (c) – or vice versa.

In fact, Plaintiff's sleight-of-hand based on Subsection (b) is contradictory and ultimately

---

[2] Of course, at this time, if you were paging someone – you wouldn't say in plain English that you were calling that person – you were *paging* them. But given that Subsection (b) regulates *autodialing*, such equipment could easily *dial* telephone numbers assigned to pagers – resulting in the recipient getting charged for such random or sequential war dialing. And that's precisely the conduct that Subsection (b) distinctly regulates – not live, unsolicited telemarketing "telephone calls" to residential lines under Subsection (c), with its distinct private right of action.

self-defeating. That is because in Subsection (c), Congress exclusively directed the FCC to develop rules "concerning the need to protect ***residential telephone subscribers'*** privacy rights to avoid receiving telephone solicitations to which they object." Mem. at *Id.* § 227(c)(1) (emphasis added). But in Subsection (b), Congress clearly delineated between autodialed and prerecorded calls to telephone numbers assigned to a "cellular telephone service," *id.* § 227(b)(1)(A)(iii), and telephone numbers assigned to "any residential telephone line." *Id.* § 227(b)(1)(B). In fact, under these distinct provisions, an autodialed call to a landline is never actionable, while the same autodialed call to a cell phone would require consent. In other words, at the time the TCPA was enacted (and to this day), Congress clearly distinguished between cell phones on the one hand, and residential lines (i.e., landlines) on the other. Yet, again, Subsection (c) is **exclusively** limited to protecting the latter. Text messages are uniquely a form of communication sent to cell phones – and not *residential lines* – making it doubly impossible that Congress could have intended text messages to be encompassed by Subsection (c) in 1991.

Text messages are not, and have never been, telephone calls. And the plain and ordinary meaning of "residential lines" at the time of the TCPA's enactment clearly excluded cell phones. Plaintiff's sole claim for three text messages to her cellphone thus clearly falls outside Subsection (c)'s private right of action limited to telephone calls to residential lines.

### B. Congress Removed Any Doubt That Text Messages Are Not Telephone Calls

Leadpoint demonstrated that Congress's 2018 amendments to Subsection (e) of the TCPA – which specifically addressed text messages as distinct from calls – removed any doubt that a text message is not a telephone call encompassed by Subsection (c)'s private right of action – which is expressly limited to the receipt of telephone calls[3] in violation of the

---

[3] Plaintiff also points out that *parts of* Subsection (c) address "telephone solicitations" – which is defined to include "a telephone call **or message**." Opp. at 7 (citing 47 U.S.C. § 227(a)(4)

regulations the FCC adopted in 1992. Mem. at 6. In fact, the FCC itself recognized this reality by supplementing its later regulations – which the *FCC* may have the authority to enforce – by also distinguishing between text messages and telephone calls. *Id.* at 7-8.

Plaintiff does not respond to this argument, which is fatal to her position. Plaintiff's failure to address the amendment is dispositive in Leadpoint's favor here "because it corresponds to the very change being made in the structure of the statute by that amendment." *New York Legal Assistance Grp. v. Bd. of Immigr. Appeals*, 987 F.3d 207, 222 (2d Cir. 2021) (holding that statute must be interpreted in a way to give "amendment 'real and substantial effect'") (*citing Stone v. I.N.S.*, 514 U.S. 386, 397 (1995)). Indeed, just as the Supreme Court addressed in *Stone*, "there would have been no reason for Congress to have included" text messages as a distinct form of a communication in the TCPA if they were already encompassed by "telephone calls." *Id.* The Court does not need to guess whether a text message *is* a telephone call under the TCPA because Congress clearly answered that in the negative in 2018.

Moreover, Plaintiff's appeal for the Court to give "deference" to the FCC, post-*Loper Bright* and *McLaughlin Chiropractic*, is similarly misplaced for the same reason. Opp. at 11. That is, in 2023, the FCC recognized Congress's clear delineation between text messages and

---

(emphasis added). Where Plaintiff errs initially is that "message" refers not to text messages – which post-date the TCPA – but to prerecorded *voice* messages (voicemails and/or robocalls). But even more fatally to Plaintiff, the fact that Congress *originally* distinguished between calls and messages – **in Subsection (c)** – but then limited the private right of action to only telephone calls (and not messages), independently demonstrates there can be no private right of action here. And for the avoidance of doubt, Congress's omission of messages under Subsection (c)'s do-not-call prohibitions made perfect sense in 1991, because the called party could not lodge their do-not-call request to a robocall message, but they could if they were talking to a live person on a telephone call. Yet consumers would be, and still are, *more* protected from unsolicited telemarketing robocalls under Subsection (b). Congress's inclusion of only live telephone calls under Subsection (c) thus is entirely logical and independently fatal to Plaintiff's position here.

telephone calls, and separately added text messages as distinct from "telephone solicitations or telemarketing calls" – in its own do-not-call rules that Plaintiff is implicitly attempting **to enforce here**. *See* 47 C.F.R. § 64.1200(e). Thus, any "deference" to the FCC would be independently fatal to Plaintiff because the FCC does not take the position that a text message is a telephone call now. Of course, if it did, there would be no reason for the FCC to have updated its regulations.[4]

At bottom, Congress amended the TCPA in a way that clearly distinguishes between text messages and telephone calls, but without updating Subsection (c)'s private right of action limited to telephone calls. That amendment independently reflects how Congress intends the TCPA to be interpreted – which is consistent with the plain English meaning of these two everyday terms. A text message is a text message, not a telephone call.

### C. Plaintiff Misconstrues The Multiple Cases Holding That There Is No Private Right Of Action For Text Messages Under Subsection (c)

Leadpoint also established that at least three federal district courts have specifically addressed the exact issue before the Court and held that Subsection (c)'s private right of action unequivocally does not encompass text messaging. Mem. at 10-11. In response, Plaintiff attempts to cast these decisions as incorrectly allowing "current intuitions" of a statute's meaning to control over "the original meaning at the time of enactment." Opp. at 10.

Plaintiff, however, is clearly misreading these cases – which all held that text messages *were **never** telephone calls* under the plain and ordinary meaning of these distinct terms. In fact,

---

[4] For the avoidance of doubt, the FCC's addition of text messages to its own do-not-call rules does not, and cannot, trump Congress's clear limit of the scope of the private right of action authorized in the statute. *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001) (language in a regulation cannot "conjure up a private cause of action that has not been authorized by Congress. Agencies may play the sorcerer's apprentice but not the sorcerer himself."). And Plaintiff does not contend otherwise.

after Leadpoint filed its Motion, yet another federal district court held that "the ordinary meaning of 'telephone call' [] exclude[s] 'text message.'" *Dilanyan v. Hugo Boss Fashions, Inc.*, No. 2:25-CV-05093-JLS-BFM, 2025 WL 3549868, at *2 (C.D. Cal. Dec. 3, 2025). And the court similarly emphasized that this has always been the case since the TCPA's enactment:

> **When the TCPA was enacted in 1991**, text messaging did not exist, so the plain meaning of "telephone call" at the time **could not possibly include a text message**. *See Jones v. Blackstone Med. Servs., LLC*, 2025 WL 2042764, at *4 (C.D. Ill. July 21, 2025). And to the ordinary person today, telephone calls and text messages are two distinct forms of communication—one involves speaking with or attempting to speak with someone in real time, and the other involves a one-way, often written communication.

*Id.* (emphasis added).[5] In short, the court in *Hugo Boss*, like those before it, made the common sense holding that the term "telephone call" could not encompass a means of communication that did not exist in 1991.

In contrast, Plaintiff would have the Court believe that the term "call" in 1991 encompassed *any* form of communication by phone, while the specific term "text message" has evolved over time. Opp. at 1. That argument, however, would only make sense if Plaintiff could point to a "missing link" – a point in time where text messaging was commonly synonymous was "telephone calls." Of course, Plaintiff can't point to *any* instance at *any* time that *anyone* has used the term text message to mean the same thing as a telephone call in plain English.

---

[5] While not relevant to the Court here, the court in *Hugo Boss*, as a California district court, nevertheless felt it was bound by the Ninth Circuit's holding in *Satterfield* giving deference to the FCC under *Chevron* that a text is a call, and directed the parties to immediately appeal this issue to the Ninth Circuit. It appears that neither party, however, brought to the court's attention the Ninth Circuit's later decision clearly distinguishing between text messages and voice calls. *See Trim v. Reward Zone USA LLC*, 76 F.4th 1157, 1162 (9th Cir. 2023) ("If voice calls encompassed text messages, the inclusion of the term text message would be surplusage, and Congress would have written the statute in a manner contrary to a basic canon of statutory construction, that a statute should be interpreted 'so as not to render one part inoperative.'").

Indeed, Plaintiff's invitation for the Court to interpret "any attempt to communicate by phone" as a telephone call within the TCPA has no limiting principle today. Hundreds of millions of Americans access their emails, instant messaging apps, social media and websites generally on their phones every day, if not all day. Is a Facebook Marketplace listing subject to the National DNC Registry? Why treat an unsolicited marketing email that makes someone's phone beep just like a text message any differently under the TCPA?

As noted above, the Supreme Court just recently and unanimously supplied the answer in response to a very similar problem created by the FCC when it rewrote the definition of an autodialer. The Court ruled that it "cannot rewrite the TCPA to update it for modern technology." *Facebook,* 592 U.S. at 397. Here, "[Wilson]'s quarrel is with Congress, which did not define a [telephone call] as malleably as [s]he would have liked." *Id.* Of course, a telephone call has never been a text message, which has never been fax, which has never been email. And if one entity is going to engage in line drawing between these distinct modes of communication, it has to be Congress.

### D. Plaintiff Does Not Dispute That The Regulations She Is Attempting To Enforce Do Not Fall Under The Plain Language Of The Regulations Enforceable Through Subsection (c)'s Private Right of Action

Leadpoint also demonstrated that the *only* regulations enforceable through Subsection (c)'s private right of action are the regulations the FCC adopted in a single rulemaking proceeding that it was required to – and did – conclude within 9 months of December 20, 1991. Mem. at 11-12. And in marked contrast to other rulemaking authority Congress granted the FCC in other sections of the same law, Subsection (c) and its private right of action – already limited to telephone calls – is further limited to enforcing ***only*** those regulations that the FCC adopted by 1992 in "***the* rulemaking proceeding** initiated under paragraph (1)." 47 U.S.C. § 227(c)(2) (emphasis added). Put another way, under the plain language of Subsection (c), the private right

of action authorized by Congress is expressly limited to specific regulations: a plaintiff can enforce the regulations adopted in 1992, but nothing else.

For her part, Plaintiff concedes she is not attempting to enforce the regulations the FCC adopted in 1992, which were the *company-specific* do-not-call rules now found at 47 C.F.R. §64.1200(d), instead of the National DNC Registry rules that the FCC adopted in a *different* rulemaking proceeding in 2003. That should end the matter under the plain language of Subsection (c)(5). Instead, Plaintiff argues that Congress simply "directed the FCC to 'conclude' an *initial* rulemaking within nine months after December 20, 1991." Opp. at 13 (emphasis added). Of course, Plaintiff cannot point to any *subsequent* rulemaking authority that Congress granted the FCC that would impact the regulations enforceable through Subsection (c)(5)'s private right of action. Either someone is enforcing the regulations adopted in the rulemaking proceeding concluded in 1992, or they are not. And Plaintiff is admittedly not.

Indeed, as the Eighth Circuit has frequently ruled, "[a]gency action taken without statutory authority must be set aside. 5 U.S.C. § 706(2)(C)." *Union Pac. R.R. Co. v. Surface Transportation Bd.*, 863 F.3d 816, 822–23 (8th Cir. 2017) (citing *U.S. ex rel. O'Keefe v. McDonnell Douglas Corp.*, 132 F.3d 1252, 1257 (8th Cir. 1998) ("An agency's promulgation of rules without valid statutory authority implicates core notions of the separation of powers, and we are required by Congress to set these regulations aside.").

To be clear, however, the Court does not need to set aside any regulation to resolve Leadpoint's Motion. It need only rule that a text message is not a telephone call subject to Subsection (c). But Plaintiff's interpretation of Subsection (c), in contrast, would lead to that result – because Congress clearly did not give the FCC open-ended rulemaking authority to later modify the private right of action. The FCC itself disclaimed any ability to do so, leaving it to

Congress to determine the specific contours of Subsection (c)'s private right of action. Mem. at 12 n.8. And under the plain language Subsection (c), Plaintiff is attempting to enforce regulations for which Congress did not authorize a private right of action.

## CONCLUSION

For the foregoing reasons, Leadpoint respectfully requests that this Court grant its Motion and dismiss Plaintiff's Complaint with prejudice.

Dated: December 31, 2025　　　　　　　　　Respectfully submitted,

**ARENTFOX SCHIFF LLP**

*Ann H. MacDonald*
Ann. H. MacDonald (Mo. Bar #61544)
233 S. Wacker Dr., Suite 7100
Chicago, IL 60606
Phone: (312) 258-5500
Email: ann.macdonald@afslaw.com

Adam Bowser (*pro hac vice* forthcoming)
1717 K. Street, NW
Washington DC 20006
Phone: (202) 857-6126
Email: adam.bowser@afslaw.com

*Attorneys for Leadpoint Inc.*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that, on December 31, 2025, she caused a true and correct copy of the foregoing to be served upon the persons listed below through the Court's electronic filing system.

    Tylor B. Whitham, Mo. Bar #69428
    12120 State Line Road, Box 265
    Leawood, Kansas 66209
    phone: 816-522-3399
    fax: 913-341-2807
    tylor@whithamlawfirm.com

    Anthony I. Paronich,
    Paronich Law, P.C.
    350 Lincoln Street, Suite 2400
    Hingham, MA 02043
    (508) 221-1510
    anthony@paronichlaw.com

                                             *Ann H. MacDonald*